UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARTHREX, INC.,

      Plaintiff,

v.                                                        CASE NO.: 8:15-cv-910-EAK-MAP

WEST COAST MEDICAL RESOURCES,
LLC, and 2 GEMINI, LLC

      Defendant.

_____/

## ORDER

THIS CAUSE is before the Court on Defendants' motion to dismiss Plaintiff's complaint (Doc. 32). After review, the Court will deny in part and grant in part Defendants' motion.

### BACKGROUND

Plaintiff, Arthrex, is a medical products manufacturer that develops and sells medical devices used by hospitals, outpatient surgery centers, physicians, and other medical and healthcare providers in the field of orthopedics (Doc. 1 ¶¶ 12, 15). Several of Arthrex's products are covered by two U.S. Patents—Patent No. 6,716,234 B2, entitled "High Strength Suture Material" (Patent 234), and Patent No. 7,029,490 B2, entitled "High Strength Suture With Coating And Colored Trace" (Patent 490)—including Arthrex's FiberWire and TigerWire products (Doc. 1 ¶¶ 23–32). Arthrex is the owner by assignment of both the 243 and 490 Patents (Doc. 1 ¶¶ 25, 30). Arthrex also owns numerous trademarks for its medical devices, including U.S. Trademark Registration No. 2808873 for FiberWire and U.S. Trademark No. 2837380 for TigerWire, as well as Trademark No. 3911238 for the unstylized word "Arthrex" (Doc. 1 ¶ 55).

1

To distribute its products, Arthrex contracts with multiple distributors pursuant to agency agreements. Some of these agency agreements provide for the distributors to self-stock Arthrex medical devices on consignment, while others require Arthrex itself to maintain an inventory of its products for sale to its customers (Doc. 1 ¶ 15). According to Arthrex, distributors never take title of the products sold to customers (Doc. 1 ¶ 15). Instead, title passes directly from Arthrex to the customer (Doc. 1 ¶ 15).

Arthrex contends that Defendant 2 Gemini, LLC (Gemini) is a "sales arm" of Defendant West Coast Medical Resources, LLC (WestCMR), and that Defendants "share the same resources, including, but not limited to, inventory, facilities, and personnel" (Doc. 1 ¶¶ 36–37). Defendants are neither distributors nor end-users of Arthrex products but are resellers who, according to Arthrex, acquire Arthrex products from improper, unauthorized, and unknown third-parties for resale to other parties (Doc. 1 ¶¶ 33, 42, 146, 152) (Doc. 42). Defendants, in turn, resell Arthrex products throughout Florida and the United States via online company websites and online stores, such as EBay (Doc. 1 ¶¶ 34–35). Defendants do not have any business relationships with Arthrex, and Arthrex has not licensed any intellectual property rights to Defendants (Doc. 1 ¶ 38). Furthermore, the Arthrex agency agreements prohibit distributors from selling Arthrex products to third-party resellers such as Defendants (Doc. 1 ¶ 17).

Arthrex alleges that Defendants have violated multiple federal and state laws through their procurement, advertisement, and resale of Arthrex products. Arthrex requests that the Court find that the Defendants have infringed the licensed Patents and Arthrex trademarks, made false and misleading statements on their respective company websites and online stores in violation of both federal and Florida law, and tortuously interfered with Arthrex's contractual agreements with its distributors and its business relationships with its customers (Doc. 1 ¶¶ 66 –182).

Arthrex further requests that the Court preliminarily and permanently enjoin Defendants from further infringement, false and misleading advertisement, and interference, award damages adequate to compensate the Plaintiffs for Defendants' actions, award multiple damages pursuant to 35 U.S.C. § 284, 15 U.S.C. § 1117(a), and § 817.41(6), Florida Statutes, based on Defendants' wanton and willful infringements and intentionally misleading advertisements, and find this to be an exceptional case, requiring that the Defendants cover the cost of Arthrex's litigation expenses (Doc 1. ¶¶ A–PP).

Defendants contend that the action should be dismissed because the Arthrex failed to plead around multiple affirmative defenses, including patent exhaustion, the "first sale" doctrine, and privilege (Doc 32). Defendants also maintain that dismissal is warranted because the complaint further fails to meet the pleading standards of Federal Rule of Civil Procedure 8(a)(2) as well as the more stringent requirements of Federal Rule of Civil Procedure 9(b) and 9(g) (Doc. 32).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff's complaint provide "a short and plain statement of the claims showing that the pleader is entitled to relief." However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted).

Therefore, "to survive a motion to dismiss, a complaint must now contain sufficient factual matter, *accepted as true*, to 'state a claim to relief that is plausible on its face.'" *Am.*

3

*Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *id.* at 570) (emphasis added). Courts must follow a two-step approach when considering a motion to dismiss: first, "eliminate any allegations in the complaint that are merely legal conclusions"; and second, "where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 1290 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Thus, the standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In other words, as long as the allegations are not too speculative, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

When a plaintiff's complaint alleges a cause of action sounding in fraud, however, the plaintiff must also satisfy the more specific pleading requirements of Federal Rule of Civil Procedure 9(b) by alleging "the circumstances constituting the fraud . . . with particularity." Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is to "alert[] defendants to the precise misconduct with which they are charged and [to protect] defendants against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1370–71 (11th Cir. 1997). Rule 9(b) does "not abrogate the concept of notice pleading" but "is satisfied if the complaint sets forth (1) precisely what statements or omissions were made in what documents . . . (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them, (3) the content of such statements and the manner in which they [were misleading], and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001)

4

(internal quotations omitted). "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." *Corsello v. Lincare, Inc.*, 28 F.3d 1008, 1012 (11th Cir. 2005).

## DISCUSSION

Arthrex asserts claims against both WestCMR and Gemini for direct patent infringement, false advertising in violation of the Lanham Act, trademark infringement in violation of the Lanham Act, misleading advertising in violation of § 817.41, Florida Statutes, tortious interference with a contract, tortious interference with business relationships, and injurious falsehood in violation of Florida law. The Court will address each of the Counts in turn.

### a. Direct Patent Infringement

In Counts I to IV of its complaint, Arthrex alleges that Defendants have directly infringed on the 243 and the 490 Patents in violation of 35 U.S.C. § 271(a) (Doc. 1 ¶ 66–101). Form 18 of the Federal Rules of Civil Procedure sets forth a sample complaint for a direct patent infringement claim.[1] A direct infringement claim that meets or exceeds the requirements set forth in Form 18 *de facto* meets Rule 8's "short and plain statement" requirement. *In re Bill of Lading*, 681 F.3d 1323, 1332 (Fed. Cir. 2014); *see* Fed. R. Civ. P. 84 ("The forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate."). Form 18 requires: (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent "by making, selling, and using [the device] embodying the patent"; (4) a statement that the defendant is on notice of its infringement; and (5) a demand for an injunction and/or damages. Fed. R. Civ. P. Form 18.

Arthrex alleges that this Court has original jurisdiction over its patent infringement claims pursuant to 28 U.S.C. §1331 (Doc. 1 ¶ 8) and that it owns both Patents (Doc. 1 ¶¶ 25, 30).

---

[1] Absent contrary Congressional action, Form 18 will be abrogated effective December 1, 2015. Fed. R. Civ. P. Form 18.

Further, Arthrex alleges that both Defendants "[are] directly infringing and [have] directly infringed [the Patents] . . . by selling, offering for sale, and/or importing, without license or authority, Arthrex's suture products covered by [the Patents], including, but not limited to, Arthrex's FiberWire and TigerWire" products (Doc. 1 ¶¶ 69, 78, 87, 96). Notice by Arthrex regarding the infringement may be inferred from the service of its complaint. *See, e.g., Telecomm Innovations, LLC v. Ricoh Co., Ltd.,* 966 F. Supp. 2d 390, 393–94 (D. Del. 2013); *Aeritas, LLC v. Alaska Air Grp., Inc.,* 893 F. Supp. 2d 680, 683–84 (D. Del. 2012). In its prayer for relief, Arthrex makes a demand for damages and injunctive relief (Doc 1 ¶¶ A–J). Thus, Counts I, II, III, and IV of Arthrex's complaint are in conformity with Form 18 and, therefore, satisfy the pleading requirements of Rule 8.

Defendants allege that Arthrex's patent infringement claims are subject to dismissal under doctrine of "patent exhaustion" because "Defendants purchase their entire Arthrex product supply from bona fide Arthrex customers, whose initial authorized purchase extinguishes Arthrex's patent rights" (Doc. 32). Patent exhaustion, however, is an affirmative defense, and a complaint need not anticipate and attempt to plead around affirmative defenses. *ExcelStor Tech., Inc. v. Papst Licensing GMBH & Co. KG,* 541 F.3d 1373, 1376 (Fed. Cir. 2008); *de Csepel v. Republic of Hungary,* 714 F.3d 591, 608 (D.C. Cir. 2013) (citing *Davis v. Indiana State Police,* 541 F.3d 760, 763 (7th Cir. 2008)). Instead, only when allegations contained within the complaint itself conclusively demonstrate, on their face, that an affirmative defense operates to bar recovery on the plaintiff's claim is it subject to dismissal pursuant to Rule 12(b)(6). *Cottone v. Jenne,* 326 F.3d 1352, 1357 (11th Cir. 2003).

Indeed, that is not the case here. Arthrex does not allege that Defendants acquire Arthrex products from legitimate third-party purchasers. Instead, Arthrex alleges that "Defendants

acquire Arthrex's products through improper and/or unauthorized avenues" (Doc. 1 ¶ 42). More specifically, it alleges that Defendants "obtained [Arthrex's] . . . products by improperly influencing Arthrex Distributors to breach the Arthrex Agency Agreements by selling the products to [Defendants], sometimes after reporting to Arthrex that the products were lost or damaged" (Doc. 1 ¶ 64). Therefore, accepting these allegations as true, the facts alleged within Arthrex's complaint itself do not establish the application of the doctrine of patent exhaustion, and Defendants' motion will be denied as to Counts I, II, III, and IV.

### b. False Advertising in Violation of the Lanham Act

In Counts V and VI of its complaint, Arthrex alleges that both WestCMR and Gemini made false advertising statements on their respective websites and/or online stores in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Doc. 1 ¶¶ 102–121). To successfully state a claim for false advertising under the federal Lanham Act, a plaintiff must allege: (1) that the advertisements were false or misleading, which may be satisfied by allegations that the contents of the representations are either literally false, or that they may literally be true or are ambiguous but implicitly convey a false impression, are misleading in context, or are likely to deceive consumers, *Intertape Polymer Corp. v. Inspired Techs., Inc.,* 725 F. Supp. 2d 1319, 1333 (M.D. Fla. 2010); (2) if the advertisements are misleading, that the advertisements deceived, or had the capacity to deceive, consumers, *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,* 299 F.3d 1242, 1247 (11th Cir. 2002); (3) that the deception has a material effect on consumer purchasing decisions, which may be satisfied by allegations that "the defendants misrepresented an inherent quality or characteristic of the product," *Ameritox, Ltd. v. Millennium Labs., Inc.,* 889 F. Supp. 2d 1304, 1316 (M.D. Fla. 2012); (4) that the misrepresented product or service affects interstate commerce; and (5) that the plaintiff has been injured as a result of the false

advertising. *See N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1224 (11th Cir.2008); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). Because Arthrex's complaint alleges that both Defendants made false advertising statements, and because the challenged statements were made independently by both WestCMR and Gemini on different websites and in different contexts, Counts V and VI will be analyzed separately with respect to each of the two Defendants.

As to WestCMR, the Court concludes that Arthrex's allegations are sufficient to survive a motion to dismiss. Arthrex asserts that WestCMR has made both literally false statements as well as misleading representations on its website and online store "relating to warranty coverage, quality standards, and affiliation" (Doc. 42).[2] For example, included in WestCMR's "Frequently Asked Questions" section of its website is a statement that "*all* items are still covered by the *manufacturer's* warranty" (Doc. 9-6 at 2) (emphasis added). WestCMR's website lists Arthrex as a manufacturer (Doc. 5-1). Arthrex, however, contends that it does not extend warranty coverage to Arthrex products sold by WestCMR (Doc. 1 ¶ 107). Accordingly, taking Arthrex's assertions as true, WestCMR's representation that the Arthrex products it sells are still warrantied by Arthrex itself is literally false. Thus, Arthrex's complaint suffices under prong one. *See Swatch S.A. v. New City, Inc.*, 454 F. Supp. 2d 1245, 1252 (S.D. Fla. 2006) (concluding that literally false statement on the defendant's website that watch warranty was handled by the manufacturer was sufficient to state false advertising claim under federal Lanham Act). Moreover, because Arthrex has sufficiently alleged that WestCMR made an advertisement that was literally false,

---

[2] This Court may take into account both Defendants' motion as well as Arthrex's Response in making a determination as to the sufficiency of Arthrex's complaint. *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982).

Arthrex need not allege that the advertisement deceived, or had the capacity to deceive, consumers as required by prong two. *Id.[3]*

Arthrex's complaint further satisfies the remaining three requirements necessary to appropriately plead a claim for false advertising. Arthrex asserts that WestCMR's false and misleading representations have a "material effect on the purchasing decisions of consumers because they relate to . . . product condition . . . quality, warranty coverage, and training," which Arthrex asserts are inherent qualities and characteristics of its products (Doc. 1 ¶ 110). Thus, prong three is satisfied. Arthrex's also alleges that WestCMR has communicated the false and misleading representations, via its website and online store, to consumers throughout Florida and the United States, thereby implicating interstate commerce and satisfying the fourth prong (Doc. 1 ¶ 105). Furthermore, Arthrex asserts that it has suffered injury as a result of WestCMR's false and misleading representations and will continue to suffer further damages and irreparable harm to its reputation as a provider of medical products (Doc. 1 ¶ 112). Prong five is, therefore, satisfied, and Defendants' motion will be denied as to Count V.

The Court also concludes that Arthrex's allegations are sufficient to survive Defendants' motion as to Gemini. Arthrex asserts that Gemini, via its online EBay store, offered for sale Arthrex SwiveLock suture anchors (Doc. 1 ¶ 22). The listing stated that "the item is not a food or medical product that has expired" and that the "item has been properly stored and handled, following the manufacturer's recommendations" (Doc. 1 ¶ 60). In their motion, however,

---

[3] *With regard to the first prong, however, Arthrex's false advertising claim is also sufficient to withstand Defendant's' motion because Arthrex adequately alleges that WestCMR's online advertising is misleading. Arthrex asserts that the statements are misleading because, in contrast to WestCMR's actual or implied representations to the contrary, (Doc. 9-6 at 1–2), WestCMR does not (1) verify the condition of Arthrex's medical devise, (2) have sufficient knowledge of Arthrex's quality control standard and thus, cannot properly follow them, (3) sell Arthrex's products in their original and unopened packaging, (4) offer the very same products that consumers would receive from Arthrex, or (5) have a business relationship with Arthrex and its Distributors (Doc. 1 ¶ 103–109). Arthrex then further alleges that these misleading representations are likely to deceive consumers "because they convey a false impression of affiliation of the parties" (Doc. 1 ¶ 106).*

Defendants admit that some of the products listed on Gemini's online store were, in fact, expired (Doc. 32). Thus, accepting Arthrex's allegations as true, Gemini's representation that the Arthrex products it sells are unexpired is literally false. Furthermore, Arthrex alleges that Gemini's representations that the items have been properly handled are misleading because "Arthrex does not have control over Gemini's distribution of stock and has not made any recommendations to [Gemini] relating to handling and shipping procedures" (Doc 1. ¶ 118). Thus, Count VI of Arthrex's complaint suffices under prong one.

Arthrex has satisfied prong two because Gemini's advertisements can be viewed as literally false, and because Arthrex has sufficiently alleged that Gemini's misleading statements have a tendency to deceive consumers into believing that Gemini and Arthrex have a business relationship and that Gemini's listed products also meet Arthrex's quality standards. Arthrex has also sufficiently alleged materiality by asserting that Gemini's representations go to the inherent quality of the products themselves, thereby satisfying prong three (Doc. 1 ¶ 119). Prongs four and five are satisfied because Gemini's advertisements affect interstate commerce (Doc. 1 ¶ 116) and because Arthrex has alleged damages arising out of the false advertisements (Doc. 1 ¶ 121). Arthrex has, therefore, satisfied its pleading requirements, and Defendants' motion will be denied as to Count VI.

### c.  Trademark Infringement in Violation of the Lanham Act

In Counts VII and VIII of its complaint, Arthrex alleges that both WestCMR and Gemini infringed on Arthrex's trademarks in violation of the Lanham Act (Doc. 1 ¶¶ 122–132). To sufficiently plead trademark infringement under the Lanham Act, the plaintiff must allege that the defendant's commercial use of a "reproduction, counterfeit, copy, or colorable imitation of a registered mark" is likely to "cause confusion." 15 U.S.C. § 1114(1)(a). Arthrex's complaint

alleges that both Defendants have willfully and without authorization "used in commerce" Arthrex's registered trademarks in such a way that is likely to confuse consumers "as to the source, origin, affiliation, approval, or sponsorship" of Defendants' goods (Doc. 1 ¶ 125, 130). Thus, the complaint sufficiently alleges that Arthrex had registered trademarks that both Defendants have reproduced in order to cause confusion among the consuming public. Therefore, Arthrex has pled a plausible claim of trademark infringement as to both Defendants.

The fundamental essence of Defendants' motion, however, is not that Plaintiff has failed to plead facts sufficient to state a claim for trademark infringement, but rather that Arthrex has failed to plead facts sufficient to overcome the "first sale" doctrine defense (Doc. 32). But as already addressed above with respect to Arthrex's patent infringement claims, "[c]omplaints need not contain *any* information about defenses and may not be dismissed for that omission." *Xechem, Inc. v. Bristol-Meyers Squibb Co.*, 372 F.3d 899, 901 (7th Cir.2004) (emphasis in original). Only when the plaintiff effectively pleads itself out of court by admitting all the elements of a particular defense may the complaint be dismissed pursuant to a defendant's 12(b)(6) motion. *Id.*

Arthrex's has not pled itself out of court with respect to Counts VII and VIII. Indeed, the first sale doctrine operates to exhaust a trademark owner's protections under the Lanham Act only "*after the trademark owner's first authorized sale of that product.*" *Davidoff & CIE, S.A. v. PLD Intn'l Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001) (emphasis added). Arthrex alleges, however, that both Defendants "acquire Arthrex's products through improper and/or unauthorized avenues" (Doc. 1 ¶ 42), not that they have acquired the products through an authorized first sale. Therefore, Defendants' motion will be denied as to Counts VII and VIII.

### d. Misleading Advertising in Violation of § 817.41, Florida Statutes

In Counts IX and X of its complaint, Arthrex alleges that both WestCMR and Gemini intentionally made false and misleading statements on their respective websites in violation of §817.41, Florida Statutes. A claim under § 817.41 "is considered one for fraudulent inducement" and, thus, is subject to Rule 9(b)'s heightened pleading requirements. *Simpson v. FWM Labs., Inc.*, WL 1257714, at *4 (S.D. Fla. Mar. 29, 2010) (citing *Smith v. Mellon Bank*, 957 F.2d 856, 858 (11th Cir. 1992)).

A plaintiff-competitor may state a claim for statutory misleading advertising under Florida law by pleading: (1) the representor made a misrepresentation of a material fact; (2) the representor knew or should have known of the falsity of the statement; (3) the representor intended that the misrepresentation would induce another to rely and act on it; and (4) the plaintiff suffered injury as a result. *Smith v. Mellon Bank*, 957 F.2d 856, 858 (11th Cir.1992); *Joseph v. Liberty National Bank*, 873 So.2d 384, 388 (Fla. 5th DCA 2004); *Vance v. Indian Hammock Hunt & Riding Club, Ltd.*, 403 So.2d 1367, 1370 (Fla. 4th DCA 1981). While direct reliance on the part of the pleader would also be required for a plaintiff-*consumer* to sufficiently state a claim under § 817.41, "when the party alleging misleading advertising is a *competitor* of the defendant in selling the goods or services to which the misleading advertisement relates, an allegation of competition is permitted to 'stand-in' for the element of direct reliance." *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1322-23 (M.D. Fla. 2007) (quoting *Workplace Corp. v. Office Depot, Inc.*, 1990 WL 106727 at *1 (M.D. Fla. 1990)) (emphasis added). Similar to Arthrex's Lanham Act claims, Counts IX and X will be analyzed independently with respect to each of the Defendants.

As to WestCMR, the Court concludes that Arthrex's misleading advertising claim is sufficient to survive Defendants' motion. Arthrex alleges that WestCMR made several representations on its company website and online store that it "knew or should have known" were false and/or misleading, including: (1) that it has a business relationship with Arthrex and its Distributors; (2) that it offers "the very same" products" purchased from Arthrex; (3) that the Arthrex products it sells meet Arthrex's quality standards and have been verified to be in the same condition as when that product left Arthrex's facilities; and (4) that the Arthrex products it sells have the same manufacture's warranty as if the products ere purchased directly from Arthrex or its distributors (Doc. 1 ¶¶ 45, 134). Arthrex further alleges that WestCMR intended that these misrepresentations would induce customers to purchase Arthrex medical devise from WestCMR instead of Arthrex, and that it has suffered substantial damages as a result (Doc. 1 ¶¶ 45, 136–137). Arthrex has, therefore, precisely outlined what misrepresentations were made (what), that those misrepresentations were made by WestCMR (who) "at least at one point in time" (when) on its Company website (where), and that WestCMR intended for those misrepresentations to alter customer purchasing behavior to the detriment of Arthrex (how) (Doc. 1 ¶¶ 46, 133–137). *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (explaining that to satisfy Rule 9(b)'s heightened pleading requirements for allegations of fraud, it is "sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent"). Therefore, Defendants' motion will be denied as to Count IX.

As to Gemini, however, the Court concludes that Arthrex's misleading advertising claim is not sufficient to survive Defendants' motion. "[W]hen Rule 9(b) applies, pleadings generally cannot be based on information and belief." *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d

13

1301, 1310 (11th Cir. 2002) (internal citations and quotations omitted).[4] Arthrex states in Count

X of its complaint that "*[u]pon information and belief*, [Gemini] uses its Online Store and its

eBay Store to mislead potential and existing Arthrex customers into believing that there is a

legitimate business relationship between [Gemini] and Arthrex, and to further mislead customers

about the quality of [Gemini's] supply of medical devices" (Doc. 1 ¶ 139) (emphasis added).

Thus, Count X of Arthrex's complaint fails to meet the requirements of Rule 9(b), and, as such,

Defendants' motion will be granted as to Count X.

### e. Tortious Interference with Contract

In Counts XI and XII of its complaint, Arthrex alleges that both Defendants have

tortuously interfered with Arthrex's Agency Agreements with its Distributors (Doc. 1 ¶¶ 146,

152). Tortious interference is the intentional and unjustifiable interference with contractual

relations of a party. *Symon v. J. Rolfe Davis, Inc.,* 245 So.2d 278, 280 (Fla. 4th DCA 1971). To

state a claim for tortious interference with a contractual relationship under Florida law, a

plaintiff must allege: (1) the existence of an enforceable contract, (2) the defendant's knowledge

of that contract, (3) an intentional and unjustified interference by the defendant with the

plaintiff's rights under the contract, and (4) resulting damages. *Mariscotti v. Merco Group At

Akoya, Inc.,* 917 So.2d 890, 892 (Fla. 3d DCA 2005).

Arthrex's complaint includes facts that it distributes its products "through a network of

distributors pursuant to agency agreements," and outlines in detail the nature of Arthrex's

business relationship with its distributors (Doc. 1 ¶¶ 4–17). Specifically, the complaint states that

the agency agreements prohibit distributors from "competing with Arthrex by selling products to

---

[4] An exception may apply where specific "factual information [about the fraud] is peculiarly within the defendant's knowledge or control," and, in such a case, "the Rule 9(b) standard is relaxed." *Hill v. Morehouse Med. Associates, Inc.,* WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (internal citations and quotations omitted). That is not the case, here.

third-party resellers such as [Defendants]" (Doc 1. ¶ 17). Moreover, Arthrex alleges that

Defendants have knowledge of both the existence of these agency agreements and their

prohibition on resale to Defendants (Doc. ¶¶ 145, 151). Arthrex further claims that, despite this

knowledge, "[Defendants have] intentionally and without justification interfered with the

Arthrex agency agreements by causing certain Arthrex distributors and/or their employees and

agents to sell Arthrex medical devices to [Defendants] at a discount and . . . to share confidential

Arthrex information with [Defendants]," which caused Arthrex to suffer "irreparable harm and

damages" in the form of lost goodwill and lost profits (Doc. 1 ¶ 146, 148, 152, 154). Therefore,

the four required elements have been sufficiently pled.

Defendants assert that these allegations are legally insufficient to survive a 12(b)(6)

motion to dismiss because no copy of the agency agreement is attached to the complaint itself.

Defendants cite the Eleventh Circuit's recent decision in *Herssein Law Grp. v. Reed Elsevier,

Inc.*, 594 F. App'x 606, 608 (11th Cir. 2015) in support of their position. *Herssein*, however, is

inapposite as that case contemplated the sufficiency of a complaint alleging *breach* of contract.

*Id* ("It is a basic tenet of contract law that a party can only advance a claim of *breach* of written

contract by identifying and presenting the actual terms of the contract allegedly breached.")

(emphasis added). Therefore, *Herssein* does not control this Court's decision regarding the

sufficiency of a complaint alleging *tortious interference* with a contract. Arthrex has adequately

alleged facts that plausibly give rise to the "existence" of an enforceable agreement, and that is

all that is required. *Mariscotti*, 917 So.2d at 892; *Ace Pro Sound & Recording, LLC v. Albertson*,

512 F. Supp. 2d 1259, 1268 (S.D. Fla. 2007)

Defendants also contend that Arthrex's tortious interference with contract claims should

be dismissed because they fail to meet the heightened pleading requirements of Rule 9(b). But

15

Defendant is incorrect, because Rule 9(b) does not apply to tortious inference claims unless fraud is specifically alleged as an ingredient of the claim. *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 14 (1st Cir. 2009); *Medimport S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302, 1319 n.10 (S.D. Fla. 2013); *H.C. Starck, Inc. v. Nat'l Chain Co.*, WL 4916512, at *2 (D.R.I. Sept. 14, 2011) *report and recommendation adopted*, WL 4929522 (D.R.I. Oct. 17, 2011). That is not the case, here. Thus, Arthrex tortious interference claims are only subject to the pleading requirements of Rule 8(a), under which they are sufficient. Therefore, Defendants' motion will be denied as to Counts XI and XII.

### f. Tortious Interference with Business Relationships

In Counts XIII and XIV of its complaint, Arthrex alleges that both Defendants have tortuously interfered with Arthrex's "legitimate business relationships with its customers" (Doc. 1 ¶¶ 155–172). To state a claim for tortious interference with a business relationship under Florida law, a plaintiff must allege: (1) the existence a business relationship; (2) the defendant's knowledge of that relationship; (3) an intentional and unjustified interference with the relationship; and (4) injury resulting from the breach of the relationship. *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 (11th Cir. 1999).

Arthrex's claims for tortious interference with business relationships are sufficient as to both Defendants. Arthrex's has adequately pled the first and second elements by alleging (1) the existence of business relationships with hospitals, outpatient surgery centers, and other medical offices and (2) Defendants' knowledge of those relationships (Doc. 1 ¶¶ 15, 156–157, 165–166). *See Ameritox, Ltd. v. Millennium Labs, Inc.*, 889 F. Supp. 2d 1304, 1319 (M.D. Fla. 2012) (denying defendants motion to dismiss the plaintiff's tortious interference claim where the class of customers in the complaint were described generally as "healthcare providers"). Arthrex

16

further alleges that its relationships with these customers would have continued but for Defendants intentionally and unjustly interfering with its existing customers and, as a result, inducing them to instead purchase Arthrex's medical products directly from Defendants (Doc. 1 ¶¶ 160–162, 169–171). The alleged interference includes advertising that Arthrex medical devices sold by WestCMR and Gemini come with Arthrex warranty coverage, that these devices are in the same condition and of the same quality as those directly sold by Arthrex Distributors, and suggesting that these devices have not passed their expiration dates and that they come with Arthrex training and other services (Doc. No. 92 ¶¶ 188–94), all of which have been thoroughly described above. These allegations are sufficient to substantiate interference with Arthrex's existing customer relationships and the "irreparable harm and damages" it has suffered because of loss of past and future business due to the interference (Doc. 1 ¶¶ 163, 172). Therefore, Defendants' motion will be denied as to Counts XIII and XIV.

### g. Injurious Falsehood in Violation of Florida law

In Counts XV and XVI of its complaint, Arthrex asserts claims against both Defendants for injurious falsehood under Florida law. "The gist of injurious falsehood is the intentional interference with another's economic relations." *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1268 (S.D. Fla. 2004) (internal citations and quotations omitted). To properly plead a claim of injurious falsehood, a plaintiff must allege that the defendant: (1) communicated a falsehood to a third party; (2) knew it to be false upon its utterance; and (3) intended that the communication would influence the third-party to refrain from dealing with the plaintiff. *Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1345 (M.D. Fla. 2003). The plaintiff must also allege damages as a result of the communicated falsehood. *Id.* In so pleading, the plaintiff is only required to meet the liberal standards of Rule 8, and, in contrast to Defendants' assertions to the contrary, special

17

damages need not be pled. *Id.* at 1343–45, n.7 (stating, "Although Rule 9(g) has been interpreted to apply to claims of . . . injurious falsehood . . . that interpretation appears flawed in light of modern pleading practice . . . The Court concludes, therefore, that to state a claim for . . . injurious falsehood a party need only meet Rule 8's liberal pleading requirements," and further noting that "special damage[s]" need not be pled).

Defendants, again, challenge the falsity of the statements put forth by Arthrex to support its claims for injurious falsehood. As discussed above at length, however, Arthrex has sufficiently alleged the falsity of statements communicated to third-party customers via their on-line websites and online stores as well as Defendants' knowledge thereof. *See supra* Part III(b),. (d). Furthermore, the complaint alleges that "[Defendants] made the . . . statements . . . with the intent of improperly influencing customers to seek Arthrex products from [Defendants] rather than from Arthrex distributors," and that, "as a result of [Defendants'] false statements, Arthrex has suffered and will continue to suffer irreparable harm and damages, including but not limited to loss of customers and potential customers, loss of sales, and lost profits" (Doc. 1 ¶¶ 176–177, 181–182). Arthrex has, therefore, satisfied its pleading burden.

Defendants assert that these claims should nevertheless be dismissed for failure to meet Rule 9's heightened pleading requirements. As explained above, however, Rule 9(b) only applies to fraud allegations underlying such a claim. *See supra* Part III(e). The complaint includes no such claims. Additionally, Defendants contend that any alleged interference is justified by the privilege of competition (Doc. 32). The Court rejects this contention as well. Arthrex's complaint sufficiently alleges intentional and unjustified interference, and the privilege of competition, as noted by Defendants in their motion, is an affirmative defense. *See Burge v. Ferguson*, 619 F. Supp. 2d 1225, 1240 (M.D. Fla. 2008); *U.S. ex rel. BAC Funding Consortium,*

18

*Inc. v. Westchester Fire Ins. Co.*, WL 186125, at *4 (S.D. Fla. Jan. 16, 2014). As explained

above, Arthrex need not plead around an affirmative defense, and the applicability of privilege

does not plainly appear from the face of Arthrex's complaint. Therefore, Defendants' motion

will be denied as to Counts XV and XVI. Accordingly, it is

      **ORDERED** that Defendants' motion to dismiss Plaintiff's complaint (Doc. 32) is

**DENIED in part and GRANTED in part.** The motion is **DENIED** as to Counts I, II, III, IV, V,

VI, VII, VIII, IX, XI, XII, XIII, XIV, XV, and XVI. The motion is **GRANTED** as to Count X,

and that Count accordingly is **dismissed without prejudice.** If Arthrex wishes to re-plead the

matters included in Count X, it must do so within 20 days. Defendants have ten days from this

date to answer the Complaint.

      **DONE** and **ORDERED** in Chambers at Tampa, Florida, this 25th day of November,

2015.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT COURT JUDGE

Copies to: All parties and counsel of record.