**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ARTHREX, INC.,**

      **Plaintiff,**

**v.**                                **Case No. 8:15-cv-910-EAK-MAP**

**WEST COAST MEDICAL RESOURCES,**
**LLC and 2 GEMINI, LLC,**

      **Defendants.**
_____/

## DEFENDANTS' EMERGENCY MOTION FOR PROTECTIVE ORDER AS TO THIRD-PARTY SUBPOENAS TO DEFENDANTS' CUSTOMERS

Defendants West Coast Medical Resources, LLC and 2 Gemini, LLC (collectively the "defendants"), by and through their undersigned counsel and pursuant to Fed. R. Civ. P. 26, hereby file this Emergency Motion for Protective Order As To Third Party Subpoenas to Defendants' Customers. This Court's intervention is necessary to prevent plaintiff from serving subpoenas deliberately aimed at damaging defendants' business relationship and goodwill with its customers, which it has cultivated at great expense. The grounds upon which the instant motion is based are set forth in following supporting memorandum of law.

### SUPPORTING MEMORANDUM OF LAW

**I.**

### BACKGROUND

On April 17, 2015, plaintiff Arthrex, Inc. ("Arthrex" or "plaintiff") brought suit against defendants West Coast Medical Resources, LLC and 2 Gemini, LLC, alleging,

*inter alia,* that defendants infringed upon plaintiff's trademark and patents in connection with the sale of certain of plaintiff's products. [*See generally,* Pl.'s Am. Compl.] Plaintiff also claims that defendants made improper representations to clientele regarding Arthrex's products via its website. [*Id.* at ¶¶ 45- 54]. To obtain documentation in support of its claims, in November of 2015, plaintiff served defendants with 262 documents requests, 409 requests for admission, and two sets of interrogatories. [*See* Exhibit 1]. Included in the discovery were requests for the production of all communications defendants had with dozens of entities and individuals, many of which were defendants' current customers. [*Id.*, Pl.'s Req. for Prod. Nos. 78-127].

To facilitate the production of information necessary for plaintiff to pursue its claims, defendants entered into a stipulated confidentiality agreement ("Agreement") with plaintiff in March of 2016. [*See* Exhibit 2]. The Agreement outlined procedures for the disclosure and use of defendants' proprietary and confidential business information, and provided that properly designated information was not to be disclosed to third-parties outside of this litigation. [*See generally, id.*]. The Agreement further provided a process for plaintiff to challenge a documents' confidentiality designation. [*Id.* at ¶ 11]. Relying on the assurances plaintiff provided in the Agreement, on July 11, 2016, the defendants turned over highly sensitive, confidential, and proprietary business information--including a history of more than 3,000 customer transactions containing customer contact and pricing information—with the designation of "Highly Confidential— Attorneys' Eyes Only." Defendants have operated under the expectation that such information would not be disclosed or used in any manner except as provided for under the Agreement.

However, it now appears that plaintiff has exploited defendants' disclosure of its customer information by targeting and subpoenaing seventeen (17) of defendants' most valuable customers—many of whom *did not* appear in plaintiff's extensive document requests prior to defendants' disclosure.  Particularly given the scope and breadth of the requests, it is clear that such third-party discovery is deliberately being used by plaintiff as a means to harass, annoy, and interfere with defendants' existing business relationships.  This conclusion is clearly supported and illustrated by scope of the subpoena requests themselves:

1.  All documents to and from any officer, director, employee, representative, or agent of Defendants from April 15, 2009 to the present.

2.  All communications with any officer, director, employee, representative, or agent of Defendants from April 15, 2009 to the present.

3.  All communications with any officer, director, employee, distributor, representative, or agent of Arthrex, Inc. from April 15, 2009 to the present.

4.  All communications with any officer, director, employee, distributor, representative, or agent of Arthrex, Inc. from April 15, 2009 to the present.

5.  All documents and communications with Defendants related to Arthrex including, ***but not limited to***, any statements related to sponsorship, endorsement, and/or affiliation of Arthrex and Defendants from April 15, 2009 to the present.

6.  All documents and communications regarding requests for quotes, sales orders, purchase orders, sales agreements, invoices, and purchase agreements with Defendants related to Arthrex products from April 15, 2009 to the present.

7.  All documents and communications regarding requests for quotes, quotes, sales orders, purchase orders, sales

3

agreements, invoices, and purchase agreements with any officer, director, employee, distributor, representative, or agent of Arthrex, Inc. from April 15, 2009 to the present.

8.    All documents and communications regarding brochures, advertisements, promotions, or other marketing materials from Defendants from April 15, 2009 to the present.

9.    All documents and communications with Defendants regarding warranty coverage for any Arthrex product from April 15, 2009 to the present.

10.    All documents and communications with Defendants related to any expired Arthrex product from April 15, 2009 to the present.

11.    All documents and communications with Defendants related to any return of Arthrex product to Defendants including, but not limited to, any exchanges, refunds, corrective action reports, repairs, refusals to exchange, refusals to refund, or refusals to repair any Arthrex product from April 15, 2009 to the present.

12.    All documents and communications with Defendants related to the use of any Arthrex product including, but not limited to, any instructional materials, directions for use, training materials, operator manuals, product guides, presentations, brochures or other materials that present information about Arthrex products or surgical techniques from April 15, 2009 to the present.

13.    All documents and communications with Defendants related to the delivery of any Arthrex product, including shipping, handling, transportation, storage, packaging, sterilization, testing, or condition of any Arthrex product from April 15, 2009

Many of the requests fail to limit the subject matter to the Arthrex products at issue in this case, and instead request every communication between the defendants and its customers over a 7-year period.  Incredibly, others request nearly a decade's worth of communications between defendants' customers and *the plaintiff itself*, which would clearly be in the possession of plaintiff to the extent any such documentation existed.

4

There is little doubt that plaintiff's aim in issuing these subpoenas is to cause defendants' customers frustration and concern upon receipt, in an attempt to damage the business relationships that defendants have cultivated with their customers over a period of years and at great expense. Furthermore, plaintiff indirectly seeks defendants' trade secret pricing and customer information by using defendants' customers as the conduit of disclosure. Such conduct is not only improper, it is subject to sanctions as further explained below.

## II.

## ARGUMENT

### A.   The Legal Standard for Protective Orders

The Federal Rules of Civil Procedure provide that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense…if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). However, this broad scope is "not without limits." *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.,* 231 F.R.D. 426, 430 (M.D. Fla. 2005) (*citing Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351-52 (1978)). As this Court previously stated, such limitations apply equally to third-party subpoenas under the Federal Rules. *Commissariat A L'Energie Atomique v. Samsung Elecs. Co., Ltd.,* 2006 WL 5003562, at *2 (M.D. Fla. June 14, 2006) ("It is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34").

Federal Rule of Civil Procedure 26(c) provides that a court "for good cause shown…may make any order which justice requires to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense," including that the disclosure or discovery not be had. *Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir. 1985) (citing Fed. R. Civ. P. 26(c)); *Joy Techs., Inc. v. Flakts, Inc.,* 772 F. Supp. 842, 849 (D. Del. 1991); *Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.* 234 F.R.D. 175, 185-86 (N.D. Ill. 2006). Good cause is established when "it is specifically demonstrated that disclosure will cause a 'clearly defined and serious injury.'" *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (Fla. 3d Cir. 1995); *Sierre Equit Grp. V. White Oak Equity Partners, LLC,*2008 (S.D. Fla. 2009) ("A protective order issued pursuant to Fed. R. Civ. P. 26(c) is based on the standard of 'good cause' which calls for a 'sound basis or legitimate need to limit discovery of the subject information'") (*citing In re Alexander Grant & Co. Litig.,* 820 F.2d 352, 356 (11th Cir. 1987)).

With respect to third-party subpoenas, the Court "must examine whether a request contained in a subpoena *duces tecum* is overly broad or seeks irrelevant information under the same standards set forth in Rule 26(b) and as applied to Rule 34 requests for production." *Commissariat,* 2006 WL 5003562 at *2. To demonstrate the necessity of production via a third-party subpoena, a party must "show a substantial need for the testimony or material that cannot otherwise be met without hardship." *Fadalla v. Life Automotive Prods., Inc.,* 258 F.R.D. 501, 504 (M.D. Fla. 2007).

**B.** **The Case Law Is Well-Established That Plaintiff Should Not Be Permitted to Contact Defendants' Customers With Damaging Innuendo**

Absent this Court's intervention, plaintiff is in the position of damaging defendants' relationships with its customers merely through the service of its third party subpoenas. It is well-established in patent infringement cases that contact with a defendant's customers during discovery is subject to proscription. *See Joy Techs.,* 772

6

F.Supp. at 849 (granting protective order precluding plaintiff in patent infringement suit from seeking discovery from defendant's customers); *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington,* 103 F.R.D. 52, 57 (D. D.C. 1984) (denying defendant's request for names of customers); *Volkswagenwerk Aktiengesellschaft v. Westburg,* 260 F.Supp. 636, 637 (E.D. Pa. 1966) (granting a protective order precluding plaintiff from initiating contact with defendant's customers in trademark infringement case); *May Coating Tech., Inc. v. Illinois Tool Works,* 157 F.R.D. 55, 57 (D.Minn.1994) (ordering patent holder to refrain from contacting alleged infringer's customers).

In *Volkswagenwerk,* the plaintiff brought an action against a defendant automobile dealer, alleging trademark infringement and unfair competition.  260 F. Supp. at 637.  Through discovery, plaintiff was permitted to inspect and copy records of defendant's sales over an extended period. *Id.*  Despite the discovery provided, the plaintiff instructed one of its employees to contact various customers of the defendant to inform them of the lawsuit and inquire as to whether they purchased their vehicles as "new" or "used." *Id.*  If the customer's raised any questions, counsel's employee "was obligated to explain that [the defendant dealership] was not an authorized Volkswagen dealer; and that it appeared some [of defendant's] customers had been sold old Volkswagens when they had asked for new ones." *Id.*  The defendant sought a protective order preventing the plaintiff from contacting its customers, arguing that such contact was calculated to "destroy or seriously impair" defendant's business, as well as its goodwill with its customers. *Id.*  The plaintiff countered that its actions constituted discovery, and were necessary to shed light on:  (a) misrepresentations made by the defendant to its customers, (b) the inadequacy of the service department due its lack of

affiliation with Volkswagen, and (c) customer confusion as to whether the defendant was an authorized Volkswagen dealer. *Id.* As the court noted, plaintiff's reasons were "scarcely plausible." *Id.* Defendant never implied that it was an authorized Volkswagen dealer. Further, whether the vehicles were new or used at the time of sale was a "matter that [could] be established without customer contact at [that] stage." *Id.* The issue as to whether defendant actually infringed upon plaintiff's patents could be "determined by the actions of the defendant—its advertising, signs, literature, etc.—and there would seem to be no preliminary need to interview customers on these subjects." *Id.* Reasoning that the prejudice defendant would suffer from further contact of its customers was "obvious and irreparable," the court granted the motion for protective order, and prevented plaintiff from initiating any contact, directly or indirectly, with any customers or former customers of the defendant. *Id.*

There is little to distinguish the circumstances at issue in *Volkswagen* from the instant matter. Here, plaintiff has utilized information disclosed to it in Attorneys' Eyes Only-designated documents to target defendants' largest customers and inform them, albeit under the guise of discovery, that there are disputes between Arthrex and defendants regarding the quality and use of its products. Plaintiff failed to proffer any reason why such information was necessary at this juncture, particularly where the only allegations of misrepresentation and false advertising relate to certain verbiage pulled from defendants' website. [*See* Pl.'s Am. Compl., ¶¶ 45-54]. *See Volkswagen,* 260 F. Supp. at 637 (that contact with defendant's customers was unwarranted when the information needed could be gleaned directly from defendant's literature and advertising). Moreover, plaintiff failed to request *any* information for at least six of

these customers in its initial discovery to defendants.  Regardless of plaintiff's supposed intent, it is clear that the issuance of these subpoenas will damage defendants' relationships with its customers before the matter has been adjudicated.  In other words, plaintiff cannot "unring the bell" now that it has issued the subpoenas to defendants' customers.  *See also Murata Mfg. Co., Ltd v. Bel Fuse Inc.,* 2004 WL 1194740, *6-7 (N.D. Ill. May 26, 2004) (finding good cause and granting motion for protective order in infringement matter based on the risk to defendant's business relationships with its customers if subpoenas were to be issued).

**C.**   **Plaintiff's Subpoenas Are Overbroad and Seek Irrelevant Information**

Assuming, *arguendo,* that the Court were to permit plaintiff to seek discovery at this stage from defendants' customers, plaintiff's subpoenas are so overbroad that they are paradigmatic of third-party harassment and interference. "A party may request a protective order for a subpoena to a non-party if the subpoena seeks materials that are not relevant." *Malibu Media, LLC v. John Does 1-25,* 2012 WL 3940142, *6 (M.D. Fla. Aug. 21, 2012); *Greenawait Revocable Trust v. Brown*, 2013 WL 6844760, *3 (D. Nev. Dec. 19, 2013) ("Where, as here, a party requests information that is not reasonably calculated to lead to the discovery of admissible evidence, the party opposing disclosure may move for a protective order under Rule 26(c)").  *Maale v. Caicos Beach Club Charter, Ltd.*, 2010 WL 272913, *9 (S.D. Fla. Jan. 15, 2010) (denying a motion to compel production of documents, where the court found that the "request [was] over broad in scope, because it [sought] all communications on any and all subjects between (1) the defendants and [other non-parties]..."); *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008) (affirming lower court's decision that "all communications

between [a party] and [non-party]...were overbroad."); *Manual for Complex Litigation* § 11.443, at 75 (promoting that courts should "forbid sweeping requests" and to "direct counsel to frame requests for production of the fewest documents possible"). The Advisory Committee Notes to the 2000 Amendments to Rule 26(b)(1) further explain that "the parties have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Fed. R. Civ. P. 26, advisory committee note to 2000 amendment.  Moreover, "discovery requests seeking irrelevant information are inherently undue and burdensome." *Monte H. Greenawalt Revocable Trust v. Brown*, 2013 WL 6844760, *3 (D. Nev. Dec. 19, 2013). "[W]hen relevancy is not apparent, the burden is on the party *seeking* discovery to show the relevancy of the discovery request." *Barrington*, 2007 WL 4370647, *3 (S.D. Fla. Dec. 10, 2007). The standard is heightened further when such discovery is directed to third parties. *American Electric Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (status as a non-party is a factor that weighs against disclosure); *Solarex Corp. v. Arco Solar, Inc.,* 121 F.R.D. 163, 179 (E.D. N.Y.1988) (non-party status is factor in determining whether disclosure would be unduly burdensome).

While defendants object to the issuance of the subpoenas in their entirety, defendants' specific objections to each request are as follows:

**Request No. 1:**    All documents to and from any officer, director, employee, representative, or agent of Defendants from April 15, 2009 to the present.

*Defendants object to Request No. 1 on the grounds that it is overbroad, not reasonably limited temporally, not reasonably limited in scope, and not reasonably calculated to lead to the discovery of admissible evidence.  Specifically, this request seeks any and all documents, which necessarily includes any and all communications,*

from defendants' agents or representatives and its customers over nearly a seven (7) year period.  First, defendants object, as a whole, to the propriety of any requests sent to its customers in this litigation, as such requests will necessarily damage the business relationships and goodwill that defendants have cultivated with their clients over a period of years and at great expense. Plaintiff has failed to demonstrate or proffer any argument as to why such information cannot be properly obtained from defendant without damaging said relationships.  This request also seeks information that is irrelevant to either party's claims or defenses in this litigation, as it fails to limit the subject matter to the specific Arthrex products plaintiff claims were improperly used/sold.  Plaintiff's claims in its complaint merely state that defendants made certain assertions on its website that it contends, albeit speciously, constitute false advertising and misrepresentations.  Such limited allegations do not permit plaintiff the ability to conduct a fishing expedition as to every communication between defendants' and its customers.  Furthermore, plaintiff has made no showing that nearly a decade's worth of communications are necessary to establish its claims.  Because of the considerable burden and expense that would befall defendants' customers by responding to such a request, defendants maintain that the request is not properly tailored in scope or temporally.

Moreover, plaintiff's request necessarily entails the production of defendants' proprietary, confidential and trade secret business information, as it ultimately requests customer pricing, specification, discount, and marketing information.  The mere fact that such disclosure is by way of a third-party does nothing to change the information's trade secret nature.

**Request No. 2:**  All documents to and from any officer, director, employee, distributor, representative, or agent of Arthrex, Inc. from April 15, 2009 to the present.

*Defendants object to Request No. 2 on the grounds that it is harassing, overbroad, not reasonably limited temporally, not reasonably limited in scope, and not reasonably calculated to lead to the discovery of admissible evidence.  First, defendants object, as a whole, to the propriety of any requests sent to its customers in this litigation, as such requests will necessarily damage the business relationships and goodwill that defendants have cultivated with their clients over a period of years and at great expense.  Specifically, Request No. 3 seeks any and all communications between defendants' customers and plaintiff's agents or representatives.  Such information would necessarily be in plaintiff's custody, possession, or control, and there is no need to subject defendants' customers to burdensome collection efforts.  Plaintiff does not make any attempt to limit the subject matter of the requests to those Arthrex products it claims were improperly used or sold. Furthermore, plaintiff has made no showing that nearly a decade's worth of communications are necessary to establish its claims.*

**Request No. 3:**  All communications with any officer, director, employee, representative, or agent of Defendants from April 15, 2009 to the present.

*Defendants object to Request No. 3 on the grounds that it is duplicative and cumulative of Request No. 1.  Accordingly, defendants' objections to Request No. 1 apply equally here.*

**Request No. 4:**  All communications with any officer, director, employee, distributor, representative, or agent of Arthrex, Inc. from April 15, 2009 to the present.

*Defendants object to Request No. 4 on the grounds that it is duplicative and cumulative of Request No. 2.  Accordingly, defendants' objections to Request No. 2 apply equally here.*

**Request No. 5:**  All documents and communications with Defendants related to Arthrex including, but not limited to, any statements related to sponsorship, endorsement, and/or affiliation of Arthrex and Defendants from April 15, 2009 to the present.

*Defendants object to Request No. 5 on the grounds that it is overbroad, not reasonably limited temporally, not reasonably limited in scope, and not reasonably calculated to lead to the discovery of admissible evidence.  Specifically, this request seeks any and all documents, which necessarily includes any and all communications, between defendants' agents or representatives and its customers relating to Arthrex, in any manner, over nearly a seven (7) year period.  First, defendants object, as a whole, to the propriety of any requests sent to its customers in this litigation, as such requests will necessarily damage the business relationships and goodwill that defendants have cultivated with their clients over a period of years and at great expense. Plaintiff has failed to demonstrate or proffer any argument as to why such information cannot be properly obtained from defendants without damaging said relationships.  This request also seeks information that is irrelevant to either party's claims or defenses in this litigation, as it fails to limit the subject matter to the specific patented Arthrex products plaintiff claims were improperly used/sold.  Plaintiff's complaint merely alleges that defendants made certain assertions on its website that it contends, albeit speciously, constitute false advertising and misrepresentations.  Such limited allegations do not permit plaintiff the ability to conduct a fishing expedition as to every communication between defendants' and its customers, even if related to Arthrex.  Furthermore, plaintiff has made no showing that nearly a decade's worth of communications are necessary to establish its claims.  Because of the considerable burden and expense that would befall*

*defendants' customers by responding to such a request, defendants maintain that the request is not properly limited temporally.*

*Moreover, plaintiff's request necessarily entails the production of defendants' proprietary, confidential and trade secret business information, as it ultimately requests customer pricing, specification, discount, and marketing information. The mere fact that such disclosure is by way of a third-party does nothing to change the information's trade secret nature.*

**Request No. 6:** All documents and communications regarding requests for quotes, quotes, sales orders, purchase orders, sales agreements, invoices, and purchase agreements with Defendants related to Arthrex products from April 15, 2009 to the present.

*Defendants object to Request No. 6 on the grounds that it is duplicative and cumulative of Request No. 5. Accordingly, defendants' objections to Request No. 5 apply equally here.*

**Request No. 7:** All documents and communications regarding requests for quotes, quotes, sales orders, purchase orders, sales agreements, invoices, and purchase agreements with any officer, director, employee, distributor, representative, or agent of Arthrex, Inc. from April 15, 2009 to the present.

*Defendants object to Request No. 7 on the grounds that it is duplicative and cumulative of Request No. 2. Accordingly, defendants' objections to Request No. 2 apply equally here.*

**Request No. 8:** All documents and communications regarding brochures, advertisements, promotions, or other marketing materials from Defendants from April 15, 2009 to the present.

*Defendants object to Request No. 8 on the grounds that it is duplicative and cumulative of Request No. 1. Accordingly, defendants' objections to Request No. 1 apply equally here. Moreover, the only marketing materials, advertisements, or*

14

*promotions that plaintiff puts at issue in its complaint were certain assertions defendants*

*allegedly made on their website.   Defendants' website speaks for itself, further*

*supporting defendants' argument that these requests are merely fishing expeditions*

*meant to harass, annoy, and damage the business relationships defendants have*

*cultivated with their customers over a period of years and at great expense.*

**Request No. 9:**   All documents and communications with Defendants regarding warranty coverage for any Arthrex product from April 15, 2009 to the present.

*Defendants object to Request No. 9 on the grounds that it is duplicative and*

*cumulative of Request No. 2.   Accordingly, defendants' objections to Request No. 2*

*apply equally here.   Moreover, the only marketing materials, advertisements, or*

*promotions relating to "warranty coverage" that plaintiff puts at issue in its complaint*

*were certain assertions defendants allegedly made on their website.   Defendants'*

*website speaks for itself, further supporting defendants' argument that these requests*

*are merely fishing expeditions meant to harass, annoy, and damage the business*

*relationships defendants have cultivated with their customers over a period of years and*

*at great expense.*

**Request No. 10:**  All documents and communications with Defendants related to any expired Arthrex product from April 15, 2009 to the present.

*Defendants object to Request No. 10 on the grounds that it is duplicative and*

*cumulative of Request No. 1.   Accordingly, defendants' objections to Request No. 1*

*apply equally here.   Moreover, it is clear that the use of the term "expired" is aimed at*

*alerting defendants' customers to plaintiff's specious allegations that defendants were*

*improperly selling, storing, or shipping plaintiff's products. There can be no other*

*purpose for this request than to damage defendants' business relationships with its customers that it has cultivated over a period of years and at great expense.*

**Request No. 11:**  All documents and communications with Defendants related to any return of Arthrex product to Defendants including, but not limited to, any exchanges, refunds, corrective action reports, repairs, refusals to exchange, refusals to refund, or refusals to repair any Arthrex product from April 15, 2009 to the present.

*Defendants object to Request No. 11 on the grounds that it is duplicative and cumulative of Request No. 1.  Accordingly, defendants' objections to Request No. 1 apply equally here.  Moreover, it is clear that plaintiff's request for information regarding "refusals to exchange" and "refusals to refund" is aimed at alerting defendants' customers to plaintiff's specious allegations that defendants improperly represented that such products were guaranteed under plaintiff's warranties. There can be no other purpose for this request than to damage defendants' business relationships with its customers that it has cultivated over a period of years and at great expense.*

**Request No. 12:**  All documents and communications with Defendants related to the use of any Arthrex product including, but not limited to, any instructional materials, directions for use, training materials, operator manuals, product guides, presentations, brochures or other materials that present information about Arthrex products or surgical techniques from April 15, 2009 to the present.

*Defendants object to Request No. 12 on the grounds that it is duplicative and cumulative of Request No. 1.  Accordingly, defendants' objections to Request No. 1 apply equally here.*

**Request No. 13:**  All documents and communications with Defendants related to the delivery of any Arthrex product, including shipping, handling, transportation, storage, packaging, sterilization, testing, or condition of any Arthrex product from April 15, 2009.

*Defendants object to Request No. 13 on the grounds that it is duplicative and cumulative of Request No. 1.  Accordingly, defendants' objections to Request No. 1 apply equally here.  Moreover, it is clear that plaintiff's request for information regarding,*

*inter alia, "shipping," "handling," "packaging," "sterilization," and "testing," is aimed at alerting defendants' customers to plaintiff's specious allegations that defendants improperly shipped or transported plaintiff's products. There can be no other purpose for this request than to damage defendants' business relationships with its customers that it has cultivated over a period of years and at great expense.*

From these requests, it is apparent that plaintiff is less concerned about obtaining limited and essential information to support its claims, and more concerned with directing business away from defendants.   Defendants have already produced thousands of transactions related to Arthrex products that took place between defendants and their customers, so there is no validity or substantial need in requesting every document or communication that ever occurred between them.   Moreover, plaintiff's limited allegations regarding false representations allegedly made on defendants' website does not substantiate the need to require such broad, intrusive, and burdensome discovery from defendants' customers.   In short, plaintiff's need for such cumulative and irrelevant information is substantially outweighed by the risk of harm to defendants' business relationships. Accordingly, defendants respectfully request that the Court grant their Motion and quash plaintiff's subpoenas to defendants' customers in their entirety, as the documents sought are irrelevant to either parties' claims or defenses in this litigation, and the issuance of the subpoenas was merely for the purpose of annoyance and harassment.

**D.   Alternatively, Defendants Request That Documents Produced Be Designated Confidential**

Alternatively, if the Court decides to permit any or all of plaintiff's requests to defendants' customers, much of the information requested necessarily encompasses

defendants' trade secret customer pricing, discount, and marketing information. Defendants have legitimate property interests in such information. *See In re Adobe Systems, Inc. Securities Litigation,* 141 F.R.D. 155, 158 (N.D. Cal. 1992); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dunn,* 191 F. Supp. 2d 1346, 1350-51 (M.D. Fla. 2002). Accordingly, defendants respectfully request that they be afforded 60 days after the production of any responsive information from third-parties to review and properly designate the responsive information as "Confidential" or "Highly Confidential— Attorney's Eyes Only" pursuant to the parties' Agreement.   In the interim, defendants would further request that all documents produced be designated "Highly Confidential— Attorney's Eyes Only."   While not a direct competitor, there is good cause to prevent plaintiff's in-house counsel—who is, for all intents and purposes, the employee of an entity in competition with defendants—from being granted access to documents pertaining to defendants' business relationships with its customers.  *See Maxtena, Inc. v. Marks,* 289 F.R.D 427, 446-47 (D. Md. 2012) (ordering that "all documents produced in response to any third-party subpoena [be marked] as 'confidential'" for 90 days until counsel had time to review and make designations pursuant to the confidentiality order).

E.     **Sanctions Are Appropriate for Plaintiff's Conduct**

Federal Rule of Civil Procedure 26(g) provides that any discovery request must be signed by at least one attorney, certifying that the request was:

> [N]ot interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and [is] neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g)(1)(B)(i)-(iii).   If any discovery request violates this rule without substantial justification, "the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both."  Fed. R. Civ. P. 26(g)(3).   Such a sanction may include the payment of attorneys' fees incurred as a result of the violation.   As stated in the Advisory Committee Notes, "sanctions to deter discovery abuse would be more effective if they were diligently applied 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."  Fed. R. Civ. P. 26(g)(3), advisory committee's note (*citing National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 643 (1976)).   Moreover, because subpoenas are "mandates of the court," plaintiff's counsel had "increased responsibility and liability for [its] misuse."  Fed. R. Civ. P. 45 advisory committee's note (citations omitted).

Prior to the issuance of the subpoenas, plaintiff sent courtesy copies to defendants via e-mail on Friday, July 22, 2016 at 1:16 p.m. Within the hour, defendants' counsel responded stating that defendants had concerns regarding the propriety of the subpoenas, as well as the use of documentation marked Highly-Confidential-Attorney's Only to target certain of defendants' large customers.   Despite defendants' counsel's attempt to conciliate the matter and avoid unnecessary motion practice, plaintiff's counsel stated that it would not delay issuing the subpoenas to conciliate defendants' concerns.   Plaintiff's counsel's conduct, the harassing and overbroad nature of the requests, and the well-established case law precluding the unnecessary solicitation of defendants' customers in the instant matter all support a finding that sanctions are

appropriate.  Plaintiff's counsel should not be rewarded for their improper abuse of their subpoena powers.

III.

<u>**CONCLUSION**</u>

For the foregoing reasons, defendants respectfully request: (1) that the Court immediately enter an interim order preventing plaintiff from serving its subpoenas as planned; (2) to the extent that such subpoenas have already been served, requiring plaintiff to immediately contact all subpoenaed parties and inform them that they are not required to produce documents until further notice; (3) that should any party produce documents in the interim, plaintiff be prohibited from inspecting those documents; and (4) imposing monetary sanctions for the abuse of plaintiff's subpoena power.

Respectfully submitted,

/s/ Richard C. McCrea, Jr.
Richard C. McCrea, Jr.
Florida Bar No. 351539
mccrear@gtlaw.com
Greenberg Traurig, P.A.
101 E. Kennedy Boulevard
Suite 1900
Tampa, Florida  33602
Telephone:  (813) 318-5700
Facsimile:  (813) 318-5900


Allan Kassenoff (*pro hac vice*)
kassenoffa@gtlaw.com
Justin MacLean (*pro hac vice*)
macleanj@gtlaw.com
Greenberg Traurig, LLP
200 Park Avenue
New York, NY  10166
(212) 801-2157
(212) 805-9407 (facsimile)

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on July 25, 2016 I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system.

Sean M. McDonough, Esquire
Amy L. Baker, Esquire
Wilson Elser Moskowitz Edelman & Dicker LLP
111 North Orange Avenue, Suite 1200
Orlando, FL  32801

Francis Torrence, Esquire (*pro hac vice*)
Wilson Elser Moskowitz Edelman & Dicker LLP
525 Market Street, 17th Floor
San Fancisco, CA  94105

Anthony Cho, Esquire (*pro hac vice*)
David Atallah, Esquire (*pro hac vice*)
Carlson, Gaskey & Olds, P.C.
400 W. Maple, Suite 350
Birmingham, MI  48009

/s/ Richard C. McCrea, Jr.